Laurence L. Rector v. Commissioner. Helen M. Rector v. Commissioner.
Rector v. Commissioner
Docket Nos. 5907 and 5908.
United States Tax Court
1945 Tax Ct. Memo LEXIS 41; 4 T.C.M. (CCH) 1013; T.C.M. (RIA) 45337; November 8, 1945
*41 James H. Yeatman, Esq., Lyle R. Sproles, C.P.A., 603 Petroleum Bldg., and Max Hendrick, Jr., Esq., for the petitioners. Donald P. Chehock, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These proceedings, consolidated for hearing, challenge respondent's determination of deficiencies in petitioners' income tax for the year 1941 as follows: Laurence L. Rector
$379.02
Helen M. Rector
379.02
Each of the petitioners also claims overpayment in the amount of $1,780.62 for 1941. Three questions are presented: 1. Are petitioners required to include, as part of their income for 1941, royalties due them but unpaid during the year? 2. Are petitioners required to include, as part of their income for 1941, royalties paid during the year, although there were unpaid accrued royalties due for prior years? 3. Did respondent err in disallowing a bad debt deduction in the sum of $1,510 claimed by petitioners for the year 1941? Findings of Fact Petitioners, who are husband and wife and are residents of the State of Texas, filed separate individual income tax returns on a community property basis for the year 1941 *42 with the collector of internal revenue for the second district of Texas, showing total income tax for each in the sum of $1,780.62. Laurence L. Rector will hereinafter be referred to as "petitioner." The sum of $1,780.62 was paid as follows: Helen
Petitioner
Rector
March 11, 1942
$ 445.15
$ 445.16
June 15, 1942
445.16
445.15
September 3, 1942
445.16
445.16
December 17, 1942
445.15
445.15
$1,780.62
$1,780.62
Petitioner is president of the Rector Well Equipment Company (hereinafter referred to as the "company") and during the year in question owned 55 percent of the stock of the company. The company is engaged in the business of manufacturing or having manufactured oil field equipment. The business was commenced in 1930 as a partnership and in 1934 it was incorporated. Petitioner owned certain patents which he assigned to the company and the company agreed to pay petitioner a royalty of 10 percent of the gross amount received by it from the sale of the patented devices, "which said royalty shall be paid to Laurence L. Rector, his heirs, assigns, administrators and executors monthly, on or before the 10th day of each month following the *43 receipt of payment by Rector Well Equipment Co., Inc., of the purchase price for patented devices, or parts thereof, sold and delivered to purchasers thereof. * * *" Petitioner was obliged to pay sub-royalties to L. D. Hilton, who had an interest in one of the patents, of 10 percent of the royalties he received from the company. Sub-royalties were also payable to C. L. Cone for use of certain "Seal" patents. From the time of incorporation the company's books have been kept on an accrual basis, including the company account for royalty income payable to petitioner. Petitioner had no books of account until 1937, when a set was established. The royalty account on petitioner's books for the years 1937 through 1941 is on an accrual basis and the totals are in the same amount as appear on the books of the company. The amounts of royalty accrued on the books of the company in favor of petitioner, the amounts actually paid petitioner, the amounts of royalty entered on petitioner's books, and the amounts reported in the community returns of petitioner for the taxable years 1934 to 1943, are as follows: Royalty
For taxable
accrued per
Actual receipts
year 1934
company books
by petitioner
July 1 From Partnership - opening
entry
$ 1,766.80
From Corp.
July
148.98
August
576.21
Sept.
824.38
Nov.-Oct. Sales
523.73
Dec.-Nov.
489.29
Totals
$ 4,327.39
$ 4,327.39
1935
Jan.-Dec. Sales
$ 478.52
Feb.-Jan. Sales
663.15
Mar.-Feb. Sales
826.41
Apr.-Mar. Sales
721.79
May-Apr. Sales
590.89
June-May Sales
1,180.80
July-June Sales
868.03
Aug.-July Sales
898.64
Sept.-Aug. Sales
1,281.92
Oct.-Sept. Sales
1,244.42
Nov.-Oct. Sales
1,528.53
Dec.-Nov. Sales
1,556.61
Totals
$11,839.71
$11,839.71
1936
Jan.-Dec. Sales
$ 977.07
Feb.-Jan. Sales
1,573.82
Mar.-Feb. Sales
1,158.22
Apr.-Mar. Sales
1,899.35
May-Apr. Sales
1,461.96
June-May Sales
1,667.47
July-June Sales
2,328.94
Aug.-July Sales
1,701.86
Sept.-Aug. Sales
1,259.67
Oct.-Sept. Sales
1,976.71
Nov.-Oct. Sales
2,142.14
Dec.-Nov. Sales
1,986.88
Totals
$20,134.09
$20,134.09
*44 as per
For taxable
As per peti-
petitioner's
year 1934
tioner's books
returns
July 1, From Partnership - opening
entry
No books
From Corp.
July
August
Sept.
Nov.-Oct. Sales
Dec.-Nov.Sales
Totals
$ 4,327.39
1935
Jan.-Dec. Sales
Feb.-Jan. Sales
Mar.-Feb. Sales
Apr.-Mar. Sales
No books
May-Apr. Sales
June-May Sales
July-June Sales
Aug.-July Sales
Sept.-Aug. Sales
Oct.-Sept. Sales
Nov.-Oct. Sales
Dec.-Nov. Sales
Totals
$11,839.71
1936
Jan.-Dec. Sales
Feb.-Jan. Sales
Mar.-Feb. Sales
No books
Apr.-Mar. Sales
May-Apr. Sales
June-May Sales
July-June Sales
Aug.-July Sales
Sept-Aug. Sales
Oct.-Sept. Sales
Nov.-Oct. Sales
Dec.-Nov. Sales
Totals
$20,134.09
For
Royalty
Date of
As per
taxable
accrued per
receipt by
Actual
As per peti-
petitioner's
receipts
year 1937
company books
petitioner
by
tioner's books
returns
petitioner
January
$ 1,666.19
January
$ 1,312.67
$ 1,312.67
February
2,407.62
February
1,666.19
1,666.19
March
2,070.10
March
2,407.62
2,407.62
April
2,455.65
April
2,070.10
2,070.10
May
3,402.19
May
2,455.65
2,455.65
June
5,049.33
June
3,402.19
3,402.19
July
1,380.94
July
5,049.33
5,049.33
August
1,767.50
August
1,380.94
1,380.94
September
1,635.95
September
1,767.50
1,767.50
October
1,504.65
November
2,346.24
December
1,129.29
5,303.46
$26,815.65
Totals
$26,815.65
$21,512.19
$26,815.65
$26,815.65
January
$ 2,447.10
February
$ 5,303.46
February
2,146.11
May
2,447.10
$ 2,447.10
March
1,303.19
April
1,328.84
May
1,742.27
June
1,029.67
July
963.06
August
1,091.78
September
1,569.04
October
1,069.01
November
1,056.28
December
1,370.32
December
3,774.30
14,669.57
$15,073.16
Totals
$17,116.67
$11,524.86
$17,116.67
* $15,073.16
* Royalty
$17,116.67
income
Lease
57.52
rentals
$17,174.19
Less: Royalty
2,101.03
expense
$15,073.16
1939
January
$ 1,203.93
February
1,035.34
February
$ 1,029.67
March
997.54
March
3,000.00
April
1,085.09
May
1,139.14
June
1,507.93
July
949.15
July
1,456.33
August
1,120.52
August
400.00
September
1,201.75
September
1,000.00
October
3,675.30
November
859.39
November
5,000.00
December
1,317.81
December
$16,092.89
$16,092.89
Totals
$16,092.89
$11,886.00
$16,092.89
$16,092.89
1940
January
$ 664.88
February
1,326.84
March
844.43
March
1,500.00
April
884.20
May
882.60
May
500.00
June
795.10
July
1,329.83
July
250.00
August
896.18
August
500.00
September
706.88
September
350.00
October
1,490.93
October
500.00
November
748.20
December
942.81
$11,512.78
$11,512.78
Totals
$11,512.78
$ 3,600.00
$11,512.78
$11,512.78
1941
January
$ 872.05
January
$ 200.00
February
978.55
February
453.50
March
1,230.07
March
217.13
April
2,448.26
April
99.92
May
1,404.26
May
551.00
June
2,247.13
June
1,077.00
July
2,266.09
July
6.76
August
3,553.06
August
553.77
September
1,858.60
September
5,000.00
October
2,376.89
October
1,023.65
November
1,530.25
November
237.54
**
December
1,110.52
December
8,023.78
$21,855.10
$16,850.00
***
$21,855.10
Totals
$21,855.10
* $17,423.17
$21,855.10
$16,850.00
$21,855.10
*45 Royalty
Date of
As per
As per
For
accrued per
receipt by
Actual receipts
petitioner's
petitioner's
taxable
year 1942
company books
petitioner
by petitioner
books
returns
January
$ 1,198.17
February
1,336.72
March
1,218.93
April
1,683.83
April
$ 77.00
May
622.41
June
466.25
July
565.99
July
30.55
August
347.68
August
37.31
September
579.82
September
1.85
October
337.67
October
33.05
November
247.98
November
11.27
December
343.62
December
11.50
Totals
$ 8,949.07
$ 202.53
1943
January
$ 218.06
February
422.51
February
$ 110.16
March
1,147.48
March
30.02
April
399.73
April
84.13
May
820.67
May
1,014.05
June
1,762.54
June
124.23
July
1,074.93
July
* (130.65)
August
2,113.19
August
4.10
September
1,233.01
September
333.22
October
1,325.57
October
1,190.53
November
1,967.03
November
218.05
December
1,111.65
December
332.68
None
None
Totals
$13,596.37
$ 3,310.52
*46 Sub-royalties owed by petitioner to Hilton were deducted on petitioner's books during the period 1937 to 1941, inclusive, as they accrued, and were so taken as deductions from gross royalties on the income tax returns. Prior to the year 1937, when petitioner kept no books, his income tax returns (years 1934, 1935, 1936) were prepared on a cash basis. On the income tax returns for 1938, 1939, and 1940, it is stated that they were prepared on an accrual basis. Petitioner neither sought nor received express permission of respondent to change the basis on which his returns were prepared. In a revenue agent's report for 1936 petitioner was treated as if he were on a cash basis. In a revenue agent's report for the years 1938 and 1939 it is stated that petitioner reported "income from salary, royalties, and lease operation on accrual basis. Other on cash paid and received basis." The royalty income reported in petitioner's original income tax return for 1941, filed in March, 1942, consisted of the royalties that accrued to petitioner for the year 1941 from the company, namely, $21,855.10. From this amount *47 were deducted accrued sub-royalties owed by petitioner to Hilton, royalty expense and depreciation totaling $4,437.46; net royalties being $17,417.64, as reported on the face of the return. In March, 1943, petitioner filed an amended 1941 income tax return, changing the original return in three respects, reducing the amount of the tax claimed to be owed from $1,780.62 to $1,216.51, or a difference of $564.11. The three changes were as fellows: (1) reducing royalties received from the company from $21,855.10 (the amount accrued) to $16,850 (royalties received in cash) - or a difference of $5,005.10; (2) note of W. C. Ray for $1,510 was included as a deduction for a bad debt; (3) profit on a lease sale of $2,083.26 was added to income. On March 15, 1943, a claim for refund was filed by petitioner, seeking refund in the amount of $564.11. In the claim petitioner alleged, inter alia, that he did not receive the royalty account balance of $5,005.10 either actually or constructively because of the financial condition of the company. On June 30, 1944, a claim for refund as an amendment to the earlier claim for refund was filed, seeking refund of the entire $1,780.62 paid as income tax *48 by petitioner for the year 1941. As grounds therefor it is stated: "Taxpayer has included in income $16,850.00 cash received from royalties, and although it is the contention that taxpayer is on the 'cash basis' of reporting income, it is the opinion of the Bureau of Internal Revenue (not agreed to by taxpayer) that the taxpayer is on the 'accrual bais.' This claim is filed as a protective measure and as an amendment to claim filed in March 1943, in the amount of $564.11 in the event the Bureau is upheld in it's [sic] opinion that taxpayer is on the 'accrual basis.' The basis of this claim is that income is not properly accruable if taxpayer may never receive it. * * *" The balance sheets of the company as of June 30 of the years 1938 through 1943, are as follows: ASSETS
June 30, 1938
June 30, 1939
June 30, 1940
Current Assets
Cash in Banks
$ 704.47
$ 897.02
$ 2,760.88
Deposits for Service
66.00
132.90
132.90
Accounts Receivable
6,571.36
13,266.59
3,616.00
Merchandise Inventory
39,571.15
42,854.41
52,820.64
Stocks and Bonds
22,206.25
6,742.45
6,762.18
$69,119.23
$63,893.37
$66,092.60
Fixed Assets
Automobiles
$ 3,671.38
$ 4,783.20
$ 5,129.99
Dies, Castings and Forgings
250.00
250.00
250.00
Templates and Plates
111.00
111.00
111.00
Furniture and Fixtures
1,156.32
1,318.82
1,519.02
Buildings
2,787.50
4,192.70
$ 5,188.70
$ 9,250.62
11,202.71
Less - Reserve for depreciation
1,429.25
1,319.13
3,243.35
$ 3,759.45
$ 7,931.49
$ 7,959.36
Goodwill
$ 9,670.00
$ 9,670.00
$ 9,670.00
Deferred Organization Expense
60.00
60.00
60.00
TOTAL ASSETS
$82,608.68
$81,554.86
83,781.96
LIABILITIES AND CAPITAL
Current Liabilities
Accounts Payable
$13,648.92
$11,481.59
$16,102.61
Rayrolls and Accruals
1,972.29
3,472.39
671.52
Notes Payable
5,000.00
10,000.00
$20,621.21
$14,953.98
26,774.13
Due to Officers (L. L. Rector)
[petitioner]
$ 7,041.58
$13,571.63
$17,153.59
Deferred Income
$ 1,634.94
$ 643.50
$ 643.50
Capital and Surplus
Capital - 200 shares
$20,000.00
$20,000.00
$20,000.00
Surplus
33,310.95
32,385.75
19,210.74
$53,310.95
$52,385.75
$39,210.74
TOTAL LIABILITIES AND CAPITAL
$82,608.68
$81,554.86
$83,781.96
*49 ASSETS
June 30, 1941
June 30, 1942
June 30, 1943
Current Assets
Cash in Banks $ 4,384.26
$ 5,196.60
$ 4,185.18
Deposits for Service
132.90
132.90
172.90
Accounts Receivable
8,498.58
3,946.36
14,474.59
Merchandise Inventory
51,796.53
55,164.94
42,254.29
Stocks and Bonds
6,762.18
6,762.18
6,762.18
$71,574.45
$71,202.98
$67,849.14
Fixed Assets
Automobiles
$ 4,927.33
$ 5,735.83
$ 4,278.26
Dies, Castings and Forgings
250.00
250.00
250.00
Templates and Plates
111.00
111.00
111.00
Furniture and Fixtures
1,519.02
1,653.84
1,653.84
buildings
4,192.70
4,879.67
5,044.67
$11,000.05
$12,630.34
$11,337.77
Less - Reserve for depreciation
2,339.54
4,706.12
4,990.07
$ 8,660.51
$ 7,924.22
$ 6,347.70
Goodwill
$ 9,670.00
$ 9,679,99
$ 9,670.00
Deferred Organization Expense
$ 60.00
$ 60.00
$ 60.00
TOTAL ASSETS
$89,964.96
$88,857.20
$83,950.44
LIABILITIES AND CAPITAL
Current Liabilities
Accounts Payable $15,961.66
$ 6,040.71
$12,440.14
Payrolls and Accruals
1,172.27
445.24
636.45
Notes Payable
8,449.65
5,000.00
10,000
$25,583.58
$11,485.95
$23,076.59
Due to Officers (L. L. Rector)
[petitioner]
$27,855.26
$32,140.51
$37,977.95
Deferred Income
$ 643.50
$ 643.50
$ 643.50
Capital and Surplus
Capital - 200 shares
$20,000.00
$20,000.00
$20,000.00
Surplus
15,882.62
24,587.24
2,252.40
$35,882.62
$44,587.24
$22,252.40
TOTAL LIABILITIES AND CAPITAL
$89,964.96
$88,857.20
$83,950.44
*50 The merchandise inventory shown on the balance sheet consisted, for the most part, of steel castings and forgings which were used to make the equipment which the company sold. The item of good will on the balance sheet is a fictitious figure having no relation to value. The profit and loss statements of the company as of June 30 for the years 1935 to 1943 are as follows: 1935
1936
1937
1938
Sales - Net
$79,219.85
$186,034.83
$269,669.89
$194,713.77
Less - Cost of Goods Sold
50,695.06
100,874.04
173,821.98
110,495.19
Gross Profit on Sales
$28,524.79
$ 85,160.79
$ 95,847.91
$ 84,218.58
Plus Other Income
562.50
$28,524.79
$ 85,160.79
$ 95,847.91
$ 84,781.08
Less: General Administrative and
Selling Ex-
penses
$25,886.93
$ 47,709.23
$ 63,997.81
$ 57,324.31
Other Expenses
127.70
253.87
503.97
22,906.93
$26,014.63
$ 47,963.10
$ 64,501.78
$ 80,231.24
Profit (loss) before
$ 2,510.16
$ 18,752.71
$ 31,346.13
$ 4,549.84
Depreciation
*
Less Depreciation
120.83
240.95
510.87
1,104.96
Net Profit or (loss)
$ 2,389.33
$ 18,511.76
$ 30,835.26
$ 3,444.88
*51 1939
1940
1941
1942
1943
Sales - Net
$141,061.40
$152,034.21
$153,486.86
$213,587.52
$89,826.84
Less - Cost of
67,811.63
84,271.70
92,522.07
115,510.57
58,386.01
Goods Sold
Gross Profit on
73,249.77
$67,762.51
$60,964.79
$98,076.95
$31,440.83
Sale
Plus Other
488.50
184.00
265.00
480.04
Income
$73,738.27
$67,946.51
$60,964.79
$98,341.95
$31,920.88
Less: General
Administrative
and
Selling
$58,082.53
$62,977.14
$47,008.32
$66,706.65
$44,442.20
Expenses
Other Expenses
14,840.80
* 15,677.01
16,077.88
20,564.10
8,106.21
$72,923.33
$78,654.15
$63,086.20
$87,270.75
$52,548.41
Profit (loss)
before
Deprecia-
tion
$ 814.94
($10,707.64)
($2,121.41)
$11,071.20
($20,627.53)
Less
1,009.91
2,068.61
1,206.71
2,336.58
1,707.31
Depreciation
Net Profit or
($194.97)
($12,776.25)
($3,328.12)
$8,704.62
($22,334.84)
(Loss)
The monthly bank balances of the company during the year 1941 are as follows: January 31
Overdraft
$1,192.09
February 27 or 28
Balance
2,215.16
March 31
Balance
2,198.13
April
Balance
503.10
May
Balance
322.72
June
Balance
4,084.26
July
Balance
726.84
August
Overdraft
3,110.05
September
Balance
843.50
October
Balance
10,494.35
November
Balance
3,777.30
December
Overdraft
538.62
*52 In 1940 the company borrowed $10,000 on its note which the lender bank required petitioner to endorse personally. On June 30, 1944, petitioner forgave $38,791.64 of the amount due him from the company on that date, leaving a balance owing to him of $15,322.61. Petitioner's returns for the years 1934 through 1941, including amended returns and claims for refund, were prepared by or under supervision of Lyle R. Sproles, a certified public accountant and tax consultant. Petitioner made loans to W. C. Ray totaling $1,510, including interest, and took a demand note therefor in 1938. Prior to 1938, Ray engaged successfully in the oil business. Thereafter he became associated with Bert Fields in the drilling business which failed. Subsequently he became associated with George Donnelly in another venture, but this business failed in 1941. At that time Ray secured a position on salary with an oil company. Opinion In their brief petitioners define the first "issue in this case" as "not whether the petitioner is on the cash, constructive receipt or accrual basis. The real question is, was there a reasonable expectancy that the $5,005.10 which respondent added to community income for *53 1941 would be paid?" Adopting that as a statement of the issue, we think there can be but one answer. The debtor company's balance sheet for June 30 of the year in question showed combined capital and surplus of over $35,000, and in the following year of over $44,000. This was after deducting upwards of $27,000 owed to petitioner in the one case and $32,000 in the other. Petitioner concedes that the company was solvent in the prior year of 1940 when it had a combined capital and surplus of slightly more than $39,000, and there is no evidence of any fundamental change in its ability to pay its debts during the subsequent year. In order to warrant a failure to accrue on the ground of uncollectibility, petitioner must "show the bad debt character of the accrued" obligation. . It seems to us manifest that there is not only no such showing here, but that the complete collectibility of any claim against the company during the year in issue appears affirmatively from the record. Petitioner insists that the balance sheet shows a lack of current assets available for the discharge of the royalty payments. *54 In order to make this contention, a merchandise inventory of upwards of $50,000 has to be overlooked. But in any event, to quote from . The cash balances * * * were not sufficient at all times during the years 1924 and 1925 to pay the dividends credited to plaintiff's account, but the cash position alone is not conclusive as to the ability of the company to pay. It is only one of the items going to make up its capital and surplus * * * See . We are satisfied that there was a reasonable expectancy that all sums accrued in favor of petitioner throughout the year in issue would be paid. Even if the issue is broadened to include the question of whether petitioner was on the accrual basis, the result must be the same. Petitioner's books themselves accrued as they became due not only the items of royalty receivable by petitioner but also the obligations which he undertook to pay in connection therewith. That system had been followed ever since petitioner had maintained books of account. His tax returns thereafter consistently described his system as "accrual, *55 " except for the year in issue, and the amount returned upon them was what was due rather than what had been received. The contention that the returns were so constituted because of a supposed application of the constructive receipt rule is entirely lacking in conviction. No constructive receipt theory could justify accruing expenses, which admittedly was done. All the evidence indicates that the royalties were accrual items and we so conclude. Even if, as petitioner contends, the result would be a "hybrid" system, no different conclusion is permissible. In the first place, under somewhat similar circumstances, hybrid systems have been permitted. , affirmed this issue, ; . Moreover, the record is by no means clear as to how other accounts, if any, were treated on petitioner's books. But of greater significance, the items in question were by far the largest of any involved on both the income and deduction side. Even if some of the less important accounts were dealt with on a cash basis, it would not justify the conclusion *56 that petitioner's books generally did not use the accrual system. ; see It would not put the accounts in controversy onto the cash basis. The fact that petitioner when he established his bookkeeping system changed from a cash to an accrual basis without first obtaining respondent's approval is not significant. Where the change has been made and adhered to without objection, that approval will be presumed. , affirmed, this question (C.C.A., 2nd Cir.), . It follows that petitioner's returns were properly filed on the accrual basis, and since the disputed item was necessarily accruable, respondent's action was correct. On the remaining issue, the claimed bad debt deduction should in our opinion have been allowed. Respondent's basic contention in this respect has been throughout that the note was worthless when acquired. Sufficient has been shown to eliminate that ground of disallowance. At least the underlying indebtedness which the note evidenced must have appeared collectible, or the loans *57 would not have been made. The debtor was at the time and continued for several years to be engaged in ventures which were consistent with a reasonable possibility of repayment. Respondent further urges that no change in the circumstances relating to collectibility occurred during the tax year. In this also we think him mistaken. The debtor's abandonment of his project, and his employment as a wage earner in a state where current wages are not subject to garnishment [1] were developments of the instant tax year materrially affecting prospects of collection. Finally, respondent emphasizes that no charge-off of the debt occurred until the subsequent year. But both ascertainment and charge-off have been eliminated as prerequisites of a bad debt deduction by Revenue Act of 1942, section 124(a), applicable retroactively to the year presently involved. As to this issue respondent's determination is disapproved. Decisions will be entered under Rule 50. Footnotes
*. Includes $573.17 applied against account; $20.88 expenses on company books not picked up by petitioner. ↩
**. Amended return actual cash, $16,850.00. ↩
***. Original return, $21,855.10.↩
*. July figure apparently an amount returned by petitioner to company.↩
*. Appears incorrectly on Petitioner's Exhibit No. 4.↩
*. Appears incorrectly on Petitioner's Exhibit No. 4.↩
1. Vernon's Texas Civil Statutes, Article 4099.↩